**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ALAN BRAHAMSHA, individually and on behalf of all others similarly situated, | Case No. 16-cv-10054 |
| Plaintiff, | Honorable Andrea R. Wood |
| v. | |
| REDBOX AUTOMATED RETAIL, LLC, a Delaware limited liability corporation, | |
| Defendant. | |

**DEFENDANT REDBOX AUTOMATED RETAIL, LLC'S REPLY IN SUPPORT OF
MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ......................................................................................................... 2

    A. Plaintiff Cannot Bring a TCCWNA Claim Because the Law of Illinois, Not the Law of New Jersey, Applies ....................................................... 2

        1. Illinois Choice-of-Law Rules Govern the Court's Interpretation of the Contract's Governing Law Clause ......................................... 2

        2. Under Illinois Choice-of-Law Rules, the Contract's Governing Law Provision Is Enforceable and Requires Dismissal of Plaintiff's TCCWNA Claim .................................................................................. 4

        3. Even if New Jersey Choice-of-Law Rules Apply, Illinois Law Governs and Requires Dismissal of Plaintiff's TCCWNA Claim ............. 6

            a. Applying Illinois's Consumer Protection Laws Here Would Not Violate Any Fundamental New Jersey Policy ......................... 7

            b. New Jersey Does Not Have a "Materially Greater Interest" Than Illinois in This Dispute ......................................................... 9

    B. Plaintiff Lacks Statutory Standing to Bring a TCCWNA Claim Because He Is Not "Aggrieved" ............................................................................. 10

        1. TCCWNA's Plain Language Supports Redbox's Argument That an "Aggrieved Party" Is Someone Who Has Experienced Some Form of Harm, Impact, or Effect .................................................................. 10

        2. TCCWNA's Statutory Purpose Also Indicates that an "Aggrieved Party" Is Someone Who Has Experienced Some Form of Harm, Impact, or Effect ...................................................................................... 11

        3. Case Law Interpreting TCCWNA Supports Redbox .............................. 12

        4. Plaintiff's Remaining Arguments Fail to Address Redbox's Actual Position ................................................................................................... 14

III. CONCLUSION .................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Atlantic Marine Constr. Co. v. U.S. District Court for W. District of Texas*,
   134 S. Ct. 568 (2013) ................................................................................................2, 3

*Barbarino v. Paramus Ford, Inc.*,
   Nos. BER-L-2856-15, BER-L-3010-15,
   2015 WL 5475928 (N.J. Super L. Jan. 1, 2015) ...........................................................7

*Baxter Int'l, Inc. v. Morris*,
   976 F.2d 1189 (8th Cir. 1992) ....................................................................................10

*Cameron v. Monkey Joe's Big Nut Co.*,
   No. BUR-L-2201-07, 2008 WL 6084192 (N.J. Super L. Aug. 4, 2008) ....................13

*Castro v. Sovran Self Storage, Inc.*,
   114 F. Supp. 3d 204 (D.N.J. 2015) .............................................................................11

*Davis v. Dell, Inc.*,
   No. 07-630, 2008 WL 3843837 (D.N.J. Aug. 15, 2008) ..........................................8, 9

*Ex Parte Van Winkle*,
   70 A.2d 167 (N.J. 1950)........................................................................................10, 11

*Ferens v. John Deere Co.*,
   494 U.S. 516 (1990) ......................................................................................................3

*Greenberg v. Mahwah Sales & Serv., Inc.*,
   No. BER-L-6105-15, 2016 WL 193485 (N.J. Super. L. Jan. 8, 2016) ..................7, 12

*Hall v. Sprint Spectrum L.P.*,
   876 N.E.2d 1036 (Ill. App. Ct. 2007) .......................................................................5, 6

*Halprin v. Verizon Wireless Servs., Inc.*,
   No. 07-4015(JAP), 2009 WL 1351456 (D.N.J. May 13, 2009) ..............................9, 10

*Hussein v. L.A. Fitness Int'l, L.L.C.*,
   987 N.E.2d 460 (Ill. App. Ct. 2013) .........................................................................5, 6

*IE Test, LLC v. Carroll*,
   140 A.3d 1268 (N.J. 2016).........................................................................................11

*In re License of Fanelli*,
   803 A.2d 1146 (N.J. 2002).........................................................................................11

*Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*,
 25 A.3d 1027 (N.J. 2011) ................................................................................................7

*Labor Ready, Inc. v. Williams Staffing, LLC*,
 149 F. Supp. 2d 398 (N.D. Ill. 2001) ...............................................................................6

*Maher & Assocs., Inc. v. Quality Cabinets*,
 640 N.E.2d 1000 (Ill. App. Ct. 1994) ...........................................................................4, 5

*Martinez-Santiago v. Pub. Storage*,
 38 F. Supp. 3d 500, 515 (D.N.J. 2014) ...........................................................................13

*McGarvey v. Penske Automotive Grp., Inc.*,
 639 F. Supp. 2d 450 (D.N.J. 2009), *vacated in part on reconsideration on
 other grounds*, No. 08-5610, 2010 WL 1379967 (D.N.J. Mar. 29, 2010) ...............................13

*Midway Home Entm't, Inc. v. Atwood Richards Inc.*,
 No. 98-C-2128, 1998 WL 774123 (N.D. Ill. Oct. 29, 1998) ..................................................5, 9

*Palomino v. Facebook, Inc.*,
 No. 16-cv-04230-HSG, 2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ...................................4, 5, 8

*PharMerica Corp. v. Advanced Healthcare Sols., LLC*,
 No. 10-C-349, 2010 WL 1417460 (N.D. Ill. Apr. 5, 2010) ...................................................9

*Potomac Leasing Co. v. Chuck's Pub, Inc.*,
 509 N.E.2d 751 (Ill. App. Ct. 1987) ..........................................................................5, 6, 9

*Robinson v. Toyota Motor Credit Corp.*,
 775 N.E.2d 951 (Ill. 2002) ..............................................................................................8

*Thomas v. Guardsmark, Inc.*,
 381 F.3d 701 (7th Cir. 2004) ...........................................................................................5

*United States v. Love*,
 706 F.3d 832 (7th Cir. 2013) .........................................................................................13

*Uniwest Mortg. Co. v. Dadecor Condos., Inc.*,
 877 F.2d 431 (5th Cir. 1989) .........................................................................................10

*Vigil v. Take-Two Interactive Software*,
 ___ F. Supp. 3d ___, No. 15-cv-8211 (JGK), 2017 WL 398404
 (S.D.N.Y. Jan. 30, 2017) ................................................................................................11

*Wenger v. Bob's Discount Furniture, Inc.*,
 No. 14-7707 (D.N.J. Feb. 29, 2016) ............................................................................11, 14

*Wigod v. Wells Fargo Bank, N.A.*,
   673 F.3d 547 (7th Cir. 2012) ..................................................................................7

*Wright v. Bank of Am., N.A.*,
   No. L-433-15, 2016 WL 631910 (N.J. Super. L. Jan. 28, 2016) .............................12

*WTM, Inc. v. Henneck*,
   125 F. Supp. 2d 864 (N.D. Ill. 2000) ...................................................................5, 6

**STATUTES**

Illinois Automatic Contract Renewal Act, 815 ILCS 601/1 *et seq.*.................................8

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1
    *et seq.* ........................................................................................................................8

N.J.S.A. § 1:1-1..................................................................................................................11

N.J.S.A. § 45:12-17............................................................................................................14

New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act,
   N.J.S.A. 56:12-14................................................................................................ passim

Illiniois Rental-Purchase Agreement Act, 815 ILCS 655/0.01 *et seq.* ............................8

**OTHER AUTHORITIES**

Clerk's Office, United States District Court for the Northern District of Illinois,
   Divisional Composition Map (by county), available at
   http://www.ilnd.uscourts.gov/_assets/_documents/_forms/_clerksoffice/Gener
   alInfo/Districtmap.aspx............................................................................................3

Restatement (Second) of Conflicts of Laws § 187 ................................................4, 5, 9

## I.     INTRODUCTION

Plaintiff Alan Brahamsha rented videos from Defendant Redbox Automated Retail, LLC ("Redbox") using its well-known large red kiosks. In renting the videos, he agreed to Redbox's Terms of Use ("Terms"). Although he alleges no dissatisfaction with either the videos or the Redbox service, he now seeks to sue Redbox on a single claim under the New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act, N.J.S.A. 56:12-14 ("TCCWNA"), a New Jersey statute that has certain requirements for how consumer rights (as demarcated in other laws) are stated and described in consumer contracts.

Plaintiff's claim should be dismissed because he agreed that Illinois law, not New Jersey law, governs the transactions at issue. Redbox is an Illinois business that operates unmanned movie and video rental kiosks in retail outlets throughout the country. It seeks to ensure predictability in its relationships with customers by requiring that any disputes "directly or indirectly arising out of or relating to" the Terms be decided under Illinois law. In an attempt to skirt this plain requirement, Plaintiff filed suit in New Jersey. However, shortly thereafter, Plaintiff stipulated to transfer to Illinois on Redbox's motion because of the forum-selection clause in the contract. In direct contravention of U.S. Supreme Court precedent, Plaintiff now claims that New Jersey law governs this dispute (and, separately, that this matter should be remanded to state court in New Jersey). Illinois choice-of-law rules govern here, and they require the enforcement of Redbox's governing law provision. Even if New Jersey choice-of-law rules applied, the result would be the same because Plaintiff cannot establish either that New Jersey has a "materially greater" interest in this dispute than does Illinois or that TCCWNA reflects a "fundamental" New Jersey policy that would be violated by application of Illinois's consumer protection laws. The Court must accordingly apply Illinois law and dismiss Plaintiff's TCCWNA claim.

The case is subject to dismissal on the additional basis that Plaintiff lacks statutory standing because he is not "aggrieved" and thus cannot bring a claim under the statute. On this topic, Plaintiff's opposition spends copious pages countering arguments that Redbox never

made, defending elements of his claims that Redbox never challenged, and arguing points that Redbox does not contest. Yet Plaintiff does not argue that he received defective goods, was dissatisfied with the service, or otherwise suffered any impact from the provisions in Redbox's Terms that he alleges are unlawful. He does not engage meaningfully with the plain meaning of the term "aggrieved" or with TCCWNA's statutory text. He does not cite a single case that allows a TCCWNA claim to move forward when the plaintiff alleges solely that he was party to putatively unlawful terms of service, and nothing more. Significantly, however, Plaintiff alleges that he has a Redbox account, rented movies and video games from Redbox kiosks numerous times, agreed to the Terms (Dkt. 1-1, ¶¶33, 3-36), and presumably enjoyed the use of the movies and video games.

In sum, the governing law clause to which Plaintiff agreed should be enforced. Regardless, Plaintiff does not qualify as an "aggrieved" consumer entitled to bring a claim under TCCWNA. His claim should be dismissed.

## II. ARGUMENT

### A. Plaintiff Cannot Bring a TCCWNA Claim Because the Law of Illinois, Not the Law of New Jersey, Applies

#### 1. Illinois Choice-of-Law Rules Govern the Court's Interpretation of the Contract's Governing Law Clause

Plaintiff contends that New Jersey choice-of-law rules apply both because Plaintiff filed suit in New Jersey and because the contract's forum-selection clause is "invalid." Neither argument has merit. Instead, the very cases cited by Plaintiff confirm that Illinois choice-of-law rules apply.

Plaintiff claims that *Atlantic Marine Construction Co. v. U.S. District Court for Western District of Texas*, 134 S. Ct. 568 (2013), requires the Court to apply New Jersey choice-of-law rules because Plaintiff filed suit in New Jersey. However, Plaintiff omits the holding of *Atlantic Marine* that "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer will not carry with it the original venue's choice of law rules." *Id.* at 574. The U.S. Supreme Court "reject[ed] the rule that the law of the

2

court in which the plaintiff inappropriately filed suit should follow the case to the forum contractually selected by the parties," finding that "[n]ot only would it be inequitable to allow the plaintiff to fasten its choice of substantive law to the venue transfer, but it would also encourage gamesmanship." *Id.* at 583. To discourage "forum shopping," the Court refused to "apply the *Van Dusen* rule when a transfer stems from enforcement of a forum-selection clause: The court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right." *Id.* (quoting *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990)) (internal quotation marks omitted). Because the Terms required suit to be filed in Illinois court, Illinois choice-of-law rules apply notwithstanding Plaintiff's attempt to skirt his contractual obligations by filing in New Jersey instead.

Plaintiff attempts to avoid the import of *Atlantic Marine* by suggesting that the forum-selection clause contained in the Terms was "not applied to effectuate transfer to this Court." Opp. at 6. This belies common sense and can be disposed of summarily. After removing Plaintiff's case from state court to federal court in New Jersey, Redbox promptly moved to transfer the case to this Court on the basis of the forum-selection clause alone. Dkt. 6. Plaintiff did not oppose Redbox's motion, but instead consented to the transfer to the Northern District of Illinois. Dkt. 11. As such, the transfer here plainly "stem[med] from" and was "premised on" the forum-selection clause. *See* 134 S. Ct. at 583. That the forum-selection clause calls for venue in a court in DuPage County is irrelevant. DuPage County lies within the scope of the geographic area covered by the Eastern Division of the Northern District of Illinois.[1] Not surprisingly, many courts (including at least one within the Seventh Circuit) have held that where a forum-selection clause specifies a geographic area where no federal *courthouse* is located, venue is proper within the federal *district* encompassing the area in question.[2] This makes

---

[1] *See* Clerk's Office, United States District Court for the Northern District of Illinois, Divisional Composition Map (by county), available at
http://www.ilnd.uscourts.gov/_assets/_documents/_forms/_clerksoffice/GeneralInfo/Districtmap.aspx

[2] *See, e.g.*, *Oldlaw Corp. v. Allen*, No. 07-1070, 2007 WL 2772697, at *5-6 (C.D. Ill. Sept. 24, 2007) (where no federal court existed within specified location of Scottsdale, Arizona, venue was proper in the

3

perfect sense, particularly where, as here, the forum-selection clause permits the action to be brought in "state or federal" court; a contrary reading would render superfluous the Term's reference to federal court. Notably, none of the cases cited by Plaintiff involved a forum-selection clause that expressly called for venue and jurisdiction in federal court. And in all of those cases (none of which is within the Seventh Circuit), the courts enforced the forum-selection clauses at issue; none permitted the case to proceed in an entirely different state than the one specified in the forum-selection clause. In any event, Plaintiff was required to file suit in Illinois, and Illinois choice-of-law rules undoubtedly apply.[3]

### 2. Under Illinois Choice-of-Law Rules, the Contract's Governing Law Provision Is Enforceable and Requires Dismissal of Plaintiff's TCCWNA Claim

Plaintiff's opposition is devoid of discussion of Illinois's choice-of-law rules[4] and therefore all but concedes that if those rules are applied here, the contract's governing law

---

federal court "with a venue encompassing Scottsdale" (i.e., Phoenix) because a contrary interpretation would "produce[] absurd results"); *Nahigian v. Juno-Loudoun*, LLC, 661 F. Supp. 2d 563, 568-69 (E.D. Va. 2009) (cataloguing cases and following the "majority opinion" by permitting case to proceed in "the federal court venue encompassing" the county specified in forum-selection clause where no federal courthouse was located within that county); *Epps v. 1.I.L., Inc.*, No. 07-02314, 2007 WL 4463588, at *3 (E.D. Pa. Dec. 19, 2007) (construing clause requiring suit to be brought in any court "located in Wayne County Pennsylvania" to "permit the action in . . . the federal court in the federal judicial district encompassing Wayne County, Pennsylvania, regardless of whether the federal court is physically located in the county").

[3] Plaintiff also half-heartedly suggests that the governing law clause may be invalid due to TCCWNA's non-waiver provision, which states that a contract may not contain a provision by which a consumer "waives his rights under this act." *See* Opp. at 5, 8 n.4. But the statute does *not* say that contracts entered into with New Jersey consumers cannot select the law of another state to govern, and such an interpretation is absurd. New Jersey has a strong policy favoring enforcement of governing law provisions, *see* Mot. at 14, and statutes should not be interpreted in ways that render entire bodies of law overruled *sub silentio*. Moreover, the governing law clause is not a "waiver" of anything. Plaintiff never had any rights vis-à-vis Redbox under New Jersey law because he agreed from the very moment that his relationship with Redbox was formed (when he agreed to the Terms) that Illinois law would govern his relationship with Redbox. Tellingly, Plaintiff cannot point to a single case invalidating a governing law clause on the basis of TCCWNA's anti-waiver provision. That is because courts enforce governing clauses in TCCWNA cases. *See, e.g.*, *Palomino v. Facebook, Inc.*, No. 16-cv-04230-HSG, 2017 WL 76901, at *4-5 (N.D. Cal. Jan. 9, 2017) (dismissing TCCWNA claim because the governing law clause in Facebook's Terms of Service mandated the application of California law).

[4] Plaintiff asserts without citation to authority that Illinois has "adopt[ed] Section 187 of the Restatement (Second) of Conflicts of Laws." Opp. at 5. Not so. Although Illinois courts consider Restatement § 187 "a guide for courts" considering choice-of-law issues, "it is not black-letter law to be upheld against all

4

provision is enforceable and requires application of Illinois's consumer protection laws rather than New Jersey's TCCWNA statute. Indeed, a federal court in California applying California choice-of-law rules recently came to the same conclusion: a valid California governing law clause precluded the application of TCCWNA. *Palomino v. Facebook, Inc.*, No. 16-cv-04230-HSG, 2017 WL 76901, at *4-5 (N.D. Cal. Jan. 9, 2017).

Illinois's choice-of-law rules are detailed in Redbox's motion. *See* Mot. at 5-12. In short, "Illinois's public policy strongly favors freedom to contract," and "[i]n Illinois, an express choice-of-law provision will be given effect where there is some reasonable relationship between the chosen forum and the parties or transaction and it is 'not dangerous, inconvenient, immoral, nor contrary to the public policy of our local government.'" *Hussein v. L.A. Fitness Int'l, L.L.C.*, 987 N.E.2d 460, 464-65 (Ill. App. Ct. 2013) (citations and internal quotation marks omitted).

There is no "[Illinois] public policy against applying Illinois law to contract actions." *WTM, Inc. v. Henneck*, 125 F. Supp. 2d 864, 868 (N.D. Ill. 2000). In fact, Illinois public policy recognizes parties' right to freedom of contract and favors enforcing governing law clauses that protect the contractual rights of Illinois businesses through the application of Illinois law. *See* Mot. at 7-9. This is true even when application of the governing law clause would deprive consumers of any remedy. *See Midway Home Entm't, Inc. v. Atwood Richards Inc.*, No. 98-C-2128, 1998 WL 774123, at *3 (N.D. Ill. Oct. 29, 1998) ("Illinois courts . . . have enforced parties' choice-of-law provision[s] even though a foreign state's consumer fraud statute left the Illinois residents no recourse.") (citing *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 509 N.E.2d 751, 753-54 (Ill. App. Ct. 1987)). Contrary to Plaintiff's suggestion, Opp. at 6 n. 2, Illinois courts routinely enforce governing law provisions in form contracts between companies and their customers. *See, e.g.*, *Hall v. Sprint Spectrum L.P.*, 876 N.E.2d 1036, 1042 (Ill. App. Ct. 2007)

---

other considerations," and Illinois courts will not "apply the Restatement test rigidly." *Maher & Assocs., Inc. v. Quality Cabinets*, 640 N.E.2d 1000, 1006 (Ill. App. Ct. 1994). Indeed, courts applying Illinois choice-of-law rules typically employ a less rigid test and will enforce the governing law clause "as long as the contract is valid and the law chosen is not contrary to Illinois' fundamental public policy." *See Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004); *see also* Mot. at 5-12.

("[T]he trial court properly found that the express choice-of-law provision contained in Sprint's form contract governs the contract."); *Hussein*, 987 N.E.2d at 464-65, 467 (enforcing governing law clause in an "adhesion contract"). Nor does it offend Illinois public policy that application of Illinois law would deprive Plaintiff of a remedy under another state's law.[5]

In sum, application of Illinois choice-of-law rules here mandates enforcement of the contract's governing law clause, such that Illinois substantive law governs the dispute and that Plaintiff's TCCWNA claim must be dismissed.

### 3. Even if New Jersey Choice-of-Law Rules Apply, Illinois Law Governs and Requires Dismissal of Plaintiff's TCCWNA Claim

Recognizing that application of Illinois's choice-of-law rules forecloses his TCCWNA claim, Plaintiff argues that New Jersey choice-of-law rules apply and in turn require application of New Jersey substantive law and, therefore, TCCWNA. But even if New Jersey choice-of-law rules applied, Illinois's consumer protection laws would govern because New Jersey courts enforce governing law clauses unless doing so would be contrary to a "fundamental policy" of a state with a "materially greater interest" than the chosen state in determination of the issue. In other words, to overcome the contract's governing law provision, Plaintiff must establish both that application of Illinois law would violate a fundamental policy of New Jersey and that New

---

[5] For example, in *WTM*, the court rejected the plaintiffs' argument that applying Illinois law "violates public policy because it would prevent [plaintiffs] from exercising their rights under Minnesota's security law" because "that argument relates to Minnesota's public policy, not Illinois', and does not override the choice of Illinois law." 125 F. Supp. 2d at 868. Moreover, each of the Illinois choice-of-law cases cited by Plaintiff confirms that the key inquiry is whether enforcement of a governing law provision would violate Illinois public policy, not the policy of another state. *See Maher & Assocs.,* 640 N.E.2d at 1005 (considering whether application of Texas law would run contrary to the Illinois Sales Act, which the Illinois legislature had declared a "fundamental public policy"); *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 405-07 (N.D. Ill. 2001) (enforcing contract's governing law selection because Washington law was not "repugnant to Illinois public policy," even though differences in law were "outcome determinative"); *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 509 N.E.2d 751, 758-59 (Ill. App. Ct. 1987) (refusing to override contract's selection of Michigan law despite purported conflict with Illinois policy, and noting frequent rejection of such challenges because "the public policy considerations must be strong and of a fundamental nature to justify overriding the chosen law of the parties"). Even if New Jersey public policy were a relevant consideration under the Illinois choice-of-law rules, enforcement of the governing law clause would be required because TCCWNA is not a fundamental public policy of New Jersey. *See infra* Section II.A.3.a.

Jersey has a materially greater interest than Illinois in construing the contract at issue. Plaintiff cannot establish either proposition.

### a. Applying Illinois's Consumer Protection Laws Here Would Not Violate Any Fundamental New Jersey Policy

As a preliminary matter, TCCWNA is not a "fundamental policy" of New Jersey. Plaintiff claims that because *consumer protection* is a fundamental New Jersey policy, TCCWNA is as well. But Plaintiff does not dispute that TCCWNA is a remedial statute that creates no consumer rights. *See* Mot. at 14-15. It therefore cannot evince a "fundamental" policy. In fact, New Jersey courts have criticized the attempts of plaintiffs' lawyers to use "technical violation[s] of TCCWNA" to obtain a "$100 windfall payment" for each class member. *Barbarino v. Paramus Ford, Inc.*, Nos. BER-L-2856-15, BER-L-3010-15, 2015 WL 5475928, at *3 (N.J. Super L. Jan. 1, 2015); *see also Greenberg v. Mahwah Sales & Serv., Inc.*, No. BER-L-6105-15, 2016 WL 193485, at *7 (N.J. Super. L. Jan. 8, 2016) (declining to adopt the plaintiffs' interpretation of TCCWNA because it "would permit Plaintiffs and the putative class to reap a windfall in the form of civil penalties despite suffering no harm or deprivation of rights"). Absent any legislative or judicial pronouncement about the vital importance of the provisions at issue, the Court cannot conclude that TCCWNA is a fundamental New Jersey policy.

Even if TCCWNA reflects a fundamental policy, applying Illinois law would be consistent with that policy because Illinois's laws promote the same policy interests as New Jersey's. "The purpose of the TCCWNA . . . is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts." *Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 25 A.3d 1027, 1044 (N.J. 2011). Similarly, Illinois statutes and common law provide robust protections to consumers. For example, the common law prohibits deceptive practices through causes of actions such as fraud and misrepresentation. *See, e.g.*, *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 568-69 (7th Cir. 2012) (plaintiff stated Illinois common law claim for fraudulent misrepresentation based on

7

defendant's deceptive statements).  Moreover, several Illinois statutes, including the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, the Rental-Purchase Agreement Act, 815 ILCS 655/0.01 *et seq.*, and the Automatic Contract Renewal Act, 815 ILCS 601/1 *et seq.*, aim to protect consumers, including through requirements for disclosures in consumer contracts.  *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002) (noting that the intent of the Consumer Fraud Act is "to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices" and "is to be liberally construed to effectuate its purpose").  Thus, both states share the same policy goal of protecting consumers from unfair and deceptive contract terms.

As a recent federal court decision makes clear, the fact that TCCWNA and Illinois's consumer protection laws "afford[] different rights and remedies" does not mean that Illinois's laws are "contrary" to New Jersey's.  *Palomino*, 2017 WL 76901, at *4.  In *Palomino*, the plaintiffs argued that TCCWNA should displace the governing law provision in Facebook's Terms of Service because California's consumer protection laws do not "provide the same protections as the TCCWNA" or "afford Plaintiffs the same rights."  *Id.*  The court rejected this argument, holding that because both states' laws "seek to prevent confusion and deception among consumers and to incentivize businesses to draft clear and understandable business documents," California law was not "contrary" to New Jersey law within the meaning of Restatement § 187(2)(b).  *Id.*  The same is true here.

Illinois law is not "contrary" to New Jersey policy simply because the application of Illinois law would prevent plaintiffs' lawyers from seeking windfall profits under TCCWNA.  It is well settled that under the Restatement, the fact that "applying the chosen law . . . would lead to a different result" does not create a fundamental conflict.  Restatement (Second) of Conflict of Laws § 187 cmt. g.  Significantly, courts applying New Jersey choice-of-law rules will enforce governing law provisions even when doing so would afford New Jersey residents fewer protections than under New Jersey law.  *See, e.g.*, *Davis v. Dell, Inc.*, No. 07-630, 2008 WL 3843837, at *4-5 (D.N.J. Aug. 15, 2008) (requiring application of Texas law even though this

8

prevented plaintiff from bringing a consumer class action claim). Plaintiff's string cite, Opp. at 9, to cases outside New Jersey considering conflicts involving specific provisions in other states' consumer protection laws is inapposite.[6]

### b. New Jersey Does Not Have a "Materially Greater Interest" Than Illinois in This Dispute

Even if application of Illinois law were contrary to a fundamental New Jersey policy, Illinois law would still apply because New Jersey does not have a "materially greater interest" than Illinois in this dispute. *See* Restatement § 187(2)(b). Plaintiff concedes through his silence that Illinois has a compelling interest in having Illinois law applied to contracts entered into by Illinois businesses that operate nationwide, particularly where those contracts specify that Illinois law will govern. *See* Mot. at 7-9; *PharMerica Corp. v. Advanced Healthcare Sols., LLC*, No. 10-C-349, 2010 WL 1417460, at *6 (N.D. Ill. Apr. 5, 2010) (noting "Illinois's significant interest in protecting the contractual relationships of its businesses"). Further, Plaintiff fails to explain how New Jersey has *any* interest—let alone a material interest—in a dispute where there are no allegations of any actual harm to New Jersey consumers—especially where Plaintiff repeatedly rented and benefitted from the enjoyment of Redbox's movies and video games. Even if Plaintiff could articulate some New Jersey interest, that would not be enough to override the contract's governing law provision because "the question . . . is not whether New Jersey has an interest in this matter, but rather whether New Jersey's interest is materially greater than [Illinois's]." *Halprin v. Verizon Wireless Servs., Inc.*, No. 07-4015(JAP), 2009 WL 1351456, at *2-3 (D.N.J. May 13, 2009). By definition, where both states have a substantial interest in the matter, a court "cannot find that New Jersey's interests are materially greater" than those of the other state.[7] *Id.* (enforcing contract's governing law provision). Because New Jersey does not

---

[6] Of course, the courts of the only other state relevant here—Illinois—have "enforced parties' choice-of-law provisions even though a foreign state's consumer fraud statute left the Illinois residents no recourse." *Midway Home Entm't*, 1998 WL 774123, at *3 (citing *Potomac Leasing*, 509 N.E.2d at 755-56); *see also* Mot. at 11-12.

[7] Indeed, courts applying the Restatement § 187 test regularly find that where a contract involves parties and conduct located in more than one state, neither state has a "materially greater interest" such that a

have a materially greater interest than Illinois in this dispute, the contract's governing law clause must be enforced, and Plaintiff's TCCWNA claim must be dismissed.

**B.     Plaintiff Lacks Statutory Standing to Bring a TCCWNA Claim Because He Is Not "Aggrieved"**

Even though TCCWNA's plain terms grant a private right of action only to an "aggrieved consumer," Plaintiff makes no attempt to explain how he has been harmed or affected by the provisions in Redbox's Terms that he alleges are unlawful. Instead, Plaintiff urges the Court to hold that a consumer need only be a party to a contract containing terms that allegedly violate TCCWNA in order to be "aggrieved" and thus be a proper plaintiff. But Plaintiff's position runs counter to TCCWNA's plain meaning, its statutory purpose, and judicial authority interpreting the term "aggrieved"—all of which support Redbox's position that a consumer is "aggrieved" and able to sue under TCCWNA only if she at minimum suffers *some* form of harm, impact, or effect arising out of the contractual terms that are allegedly unlawful under TCCWNA. *See* Mot. at 15-23.

**1.     TCCWNA's Plain Language Supports Redbox's Argument That an "Aggrieved Party" Is Someone Who Has Experienced Some Form of Harm, Impact, or Effect**

By using the term "aggrieved consumer" to define the class of people entitled to recover for a violation, the New Jersey legislature invoked the longstanding and well-established meaning of "aggrieved" as "one whose personal or pecuniary interests, or property rights, have been injuriously affected." *See* N.J.S.A. § 1:1-1; *Ex Parte Van Winkle*, 70 A.2d 167, 174 (N.J. 1950). Plaintiff fails to engage with the well-understood plain meaning of the term "aggrieved" as recognized by New Jersey courts and other courts around the country,[8] despite the axiom that

---

contractual governing law provision may be disregarded. *See, e.g.*, *Baxter Int'l, Inc. v. Morris*, 976 F.2d 1189, 1196-97 (8th Cir. 1992) (deferring to parties' choice of law where neither California nor Illinois had a materially greater interest in enforcing the contract); *Uniwest Mortg. Co. v. Dadecor Condos., Inc.*, 877 F.2d 431, 435-36 (5th Cir. 1989) (because Texas and Colorado both had interest in contract, "Texas' interest in the contract is not *materially* greater than Colorado's").

[8] Notwithstanding Plaintiff's invocation of the proverbial "red herring" cliché, Opp. at 18 n.7, there is nothing wrong with considering how other jurisdictions have defined the term "aggrieved." The New Jersey Supreme Court approves looking to the decisions of jurists in other jurisdictions to interpret the

10

"[i]nterpreting the statutory text" requires "ascrib[ing] to the statutory words their ordinary meaning and significance." *IE Test, LLC v. Carroll*, 140 A.3d 1268, 1278 (N.J. 2016). Indeed, another federal court has recognized that by using the term "aggrieved," an Illinois statute "limits a private right of action to a party that can link an injury to a statutory violation," because even the cases cited by the plaintiffs in that case established "that a plaintiff must link a statutory harm to an injury to have a cause of action." *Vigil v. Take-Two Interactive Software*, ___ F. Supp. 3d ___, No. 15-cv-8211 (JGK), 2017 WL 398404, at *16-17 (S.D.N.Y. Jan. 30, 2017).

Plaintiff apparently would instead read "aggrieved" right out of the statute, by defining it to mean simply "entitled to a remedy." Opp. at 17. But Plaintiff's definition is tautological: TCCWNA *provides* a remedy for an "aggrieved" person. The question is what *entitles* a person *to that remedy*. The answer is found in the remainder of the definition, which Plaintiff skips over: "a party whose personal pecuniary or property rights have been adversely affected by another person's action." *Wenger v. Bob's Discount Furniture, Inc.*, No. 14-7707, at 14 (D.N.J. Feb. 29, 2016) (attached as Exhibit A to Redbox's Mot. to Dismiss, Dkt. No. 7-1). In other words, an aggrieved person is a person *adversely affected* by the alleged violation. Again, all we have here is a Plaintiff who enjoyed the benefits of Redbox's products and services and yet is suing to vindicate a nonexistent harm from the agreed upon Terms.

### 2. TCCWNA's Statutory Purpose Also Indicates that an "Aggrieved Party" Is Someone Who Has Experienced Some Form of Harm, Impact, or Effect

Requiring that a person be adversely affected in order to sue is consistent with TCCWNA's purpose of providing a remedy to consumers who are dissuaded from pursuing claims or defenses because of mistaken beliefs founded on illegal terms or warranties in consumer contracts. *See, e.g.*, *Castro v. Sovran Self Storage, Inc.*, 114 F. Supp. 3d 204, 216 (D.N.J. 2015); *see also* Opp. at 11 (acknowledging that TCCWNA was enacted to "remediate the *harms* caused by the inclusion or omission of confusing or illegal terms") (emphasis added).

---

meaning of terms in New Jersey statutes. *See, e.g.*, *In re License of Fanelli*, 803 A.2d 1146, 1155 (N.J. 2002) (when "there is no case law interpreting" a New Jersey statute, "decisions in other jurisdictions interpreting similar language in other statutes provide guidance").

11

Under Plaintiff's theory, even a fully satisfied, happy user of Redbox's services, who had never been negatively affected, confused, or deceived by Redbox's Terms—perhaps someone who had *never even read* the Terms—could nonetheless bring a TCCWNA claim seeking statutory damages. This result cannot possibly be what the New Jersey legislature meant when it created a private right of action for an "aggrieved consumer." *See, e.g.*, *Wright v. Bank of Am., N.A.*, No. L-433-15, 2016 WL 631910, at *7 (N.J. Super. L. Jan. 28, 2016) ("'[D]eception' or some form of fraud[] is integral to the TCCWNA claim").

### 3. Case Law Interpreting TCCWNA Supports Redbox

Case law as well is in accord with Redbox's view that a party must be harmed or affected by the terms at issue to be "aggrieved" and able to bring suit. Plaintiff does not cite a single decision that has allowed a TCCWNA claim to survive a motion to dismiss when the claim is based *solely* on the allegation that the plaintiff has agreed to allegedly unlawful terms of service—and certainly no court has allowed such a claim to survive in the face of an argument that such a plaintiff is not "aggrieved" under the statute.

Most of Plaintiff's argument focuses on the unremarkable proposition that a TCCWNA plaintiff must allege a substantive violation of the statute—i.e., "that an 'aggrieved' party must establish that the provision at issue 'is or may be void, unenforceable or inapplicable in New Jersey.'" Opp. at 11-12 (citing *Greenberg*, 2016 WL 193485, at *5); *see generally* Opp. at 11-15. Of course a TCCWNA plaintiff must adequately allege that the terms at issue violate TCCWNA. But although Redbox vigorously disagrees with Plaintiff's view on the merits of his TCCWNA claims, to date it has not argued that he has insufficiently pled that element. The question before the Court, rather, is whether something more than a technical violation is required to render a plaintiff "aggrieved."

Plaintiff cites three cases to support his contention that "a person is aggrieved so long as TCCWNA is violated and they were subject to the violative terms." Opp. at 12. But none of those cases turned on whether a person is an "aggrieved consumer" solely because he agreed to allegedly unlawful terms. In two of the cases, there was no need for the courts to address the

12

issue, because the plaintiffs alleged cognizable harms. *See Castro*, 114 F. Supp. 3d at 208-09 (plaintiff's "property suffered at least $5000 of damage from water and mold while stored at Defendant's facility"); *Martinez-Santiago v. Pub. Storage*, 38 F. Supp. 3d 500, 515 (D.N.J. 2014) (business sought to enforce allegedly unlawful indemnity provision against consumer). The third case was vacated on reconsideration, *McGarvey v. Penske Automotive Group, Inc.*, 639 F. Supp. 2d 450, 461-62 (D.N.J. 2009), *vacated in part on reconsideration on other grounds*, No. 08-5610, 2010 WL 1379967 (D.N.J. Mar. 29, 2010), and thus has no precedential value. *See United States v. Love*, 706 F.3d 832, 841 n.2 (7th Cir. 2013) (noting that a case "ha[d] no precedential force" when decision was vacated, even if on other grounds).[9]

By contrast, one federal case from the District of New Jersey and one New Jersey state court case both *directly* support Redbox's position. In *Cameron v. Monkey Joe's Big Nut Company*, the plaintiff alleged TCCWNA was violated by inaccurate nutrition labels because "he was denied the ability to make an informed decision when considering the nutritional value of [defendants'] nut products." No. BUR-L-2201-07, 2008 WL 6084192, at *3 (N.J. Super L. Aug. 4, 2008). But he admitted that he "was not injured, was not concerned with the accuracy of the labels, did not notice the discrepancy until after he bought the nuts, and was not misled" and that he also "still enjoyed the nuts after he learned of the alleged inaccuracies, and continued to purchase them." *Id.* Given these facts, the court expressly held that "Plaintiff does not qualify as an 'aggrieved' consumer under N.J.S.A. § 45:12-17 because he was not injured or even unhappy." *Id.* at *8. The court *further* held that TCCWNA was not violated and, thus, the

---

[9] Even if *McGarvey* were of some precedential value, the plaintiffs in that case had experienced some loss, and thus the decision is distinguishable from Plaintiff's claim in this case. The plaintiffs in *McGarvey* sued, under TCCWNA as well as other consumer protection laws, because provisions in an automobile warranty allegedly did not comply with federal law. *McGarvey*, 639 F. Supp. 2d at 453-54. Thus, the value of the item purchased by the plaintiffs—an anti-theft system with accompanying warranty—was allegedly less than what they were entitled to under law. And the court's decision simply stated the general rule (with which Redbox agrees; see below) that "Defendants may be held liable under [TCCWNA], even if Plaintiffs have not incurred actual damages." *Id.* at 458.

13

plaintiff was not injured by any violation, *see id.*; Opp. at 12, but his failure to qualify as an "aggrieved" consumer was due to the absence of any adverse effects, 2008 WL 6084192, at *8.

Similarly, in *Wenger*, the court dismissed the plaintiffs' TCCWNA claims because neither plaintiff was "an aggrieved consumer." Both plaintiffs' deliveries were on time, and the one plaintiff who received defective furniture obtained a refund. Dkt. No. 7-1, Ex. A, at 15. Even Plaintiff agrees that *Wenger* "reached a different conclusion" than the one he urges. Opp. at 17. And Plaintiff's attempt to distinguish *Wenger* is confusing and ineffective: Plaintiff argues that the *Wenger* defendants, unlike Redbox, "attempted to conform to the law." *Id.* But they did not attempt to conform to *TCCWNA*; rather, they *acted* "in accordance with the spirit of the Household Furniture Regulations." Ex. A, at 15. Here, Plaintiff has not alleged that Redbox *did anything* other than offer Terms, to which he agreed, containing putatively unlawful provisions. Like the plaintiffs in *Wenger*, therefore, Plaintiff is not an "aggrieved" consumer.[10]

### 4. Plaintiff's Remaining Arguments Fail to Address Redbox's Actual Position

Plaintiff's remaining arguments fail to grapple with the actual areas of dispute about the governing legal standard and instead set up (and then, naturally, shoot down) arguments that Redbox never made. TCCWNA requires a plaintiff to show neither an "ascertainable loss" nor "actual damages." Opp. at 2, 11-13, 17. Redbox agrees. *See* Mot. to Dismiss at 27-30 ("To be sure, TCCWNA standing is not limited to plaintiffs who can show an entitlement to actual monetary damages."). But this is beside the point. Redbox's position is, and has consistently been, that a TCCWNA plaintiff must allege *some* harm, impact, or effect from the alleged violation to give meaning to the New Jersey legislature's use of the term "aggrieved"—even if

---

[10] The *Wenger* decision has been appealed to the Third Circuit. *See Wenger*, No. 16-1572. On November 23, 2016, the Third Circuit panel certified to the Supreme Court of New Jersey the following questions: "(1) Is a consumer who received a contract that does not comply with the Furniture Delivery Regulations, but has not suffered any adverse consequences from the noncompliance, an 'aggrieved consumer' under the TCCWNA? (2) Does a violation of the Furniture Delivery Regulations alone constitute a violation of a clearly established right or responsibility of the seller under the TCCWNA and thus provide a basis for relief under the TCCWNA?" *See* Petition for Certification of Question of State Law, No. 16-1572 (Nov. 23, 2016) (attached as Exhibit A). The New Jersey Supreme Court has yet to accept the certified questions.

14

that harm, impact, or effect does not rise to the level of "ascertainable loss" or "actual damages." Plaintiff's failure to allege that he suffered consequences from the alleged violations of TCCWNA is thus fatal to his claims.

### III. CONCLUSION

For the foregoing reasons, Redbox's motion to dismiss should be granted.

Dated: February 9, 2017

**REDBOX AUTOMATED RETAIL, LLC**

By: /s/ Debra R. Bernard
Debra R. Bernard, ARDC No. 6191217
DBernard@perkinscoie.com
**PERKINS COIE LLP**
131 S. Dearborn Street, Suite 1700
Chicago, Illinois 60603
Tel: 312.324.8400

Rebecca S. Engrav, *pro hac vice*
REngrav@perkinscoie.com
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-6168
Facsimile: (206) 359-7168